IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-cv-295-BO

| | | |
|---|---|---|
| RACHEL ELIZABETH CARLTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings, [D.E. 16, 18]. A hearing on this matter was held in Raleigh, North Carolina on August 30, 2017. [D.E. 22]. For the reasons discussed below, this matter is REMANDED for further consideration by the Commissioner.

## BACKGROUND

On November 26, 2012, Plaintiff filed applications for disability insurance benefits under Title II of the Social Security Act ("Act") and supplemental security income benefits under Title XVI of the Act. [Tr. 12]. Plaintiff claimed that she was unable to work because of chronic obstructive pulmonary disease ("COPD"), emphysema, chronic bronchitis, vertigo, status post colon surgery, arterial plaque, high cholesterol, chronic back pain, osteoporosis, numbness in feet, swelling in feet, insomnia, depression, and anxiety. [Tr. 234]. Plaintiff further alleged a disability onset date of March 1, 2008. [Tr. 235]. Plaintiff's applications were denied initially and upon reconsideration. *See* [Tr. 131–47]. An Administrative Law Judge ("ALJ") held a hearing on January 15, 2015, to consider plaintiff's claims *de novo*. [Tr. 25–45].

On February 13, 2015, the ALJ issued a decision denying plaintiff's claims. [Tr. 12–20]. On June 22, 2016, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the Commissioner's final decision. [Tr. 1–6]. On August 15, 2016, plaintiff filed a complaint seeking judicial review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). [D.E. 6].

## LEGAL STANDARD

A district court's review of the Commissioner's final decision is limited to determining whether the correct legal standard was applied and whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation and citation omitted).

Under the Act, an individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). Further:

> an individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other line of substantial gainful work . . . .

42 U.S.C. § 1382c(a)(3)(B).

The ALJ engages in a sequential five-step evaluation process to make an initial disability determination. 20 C.F.R. § 404.1520(a); *see Johnson*, 434 F.3d at 653. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). If a decision regarding the claimant's disability can be made at any step of the process, the ALJ's inquiry ceases. 20 C.F.R. § 404.1520(a)(4).

When evaluating adults, the ALJ denies the claim at step one if the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4). At step two, the ALJ denies the claim if the claimant does not have a severe impairment or combination of impairments significantly limiting her from performing basic work activities. *Id.* At step three, the ALJ compares the claimant's impairment to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed, or equivalent to a listed impairment, disability is conclusively presumed without considering the claimant's age, education, and work experience. 20 C.F.R. § 416.920(d). However, if the impairment does not meet or equal a listed impairment, the ALJ then makes a residual functional capacity ("RFC") finding. 20 C.F.R. § 404.1545(e).

In making an RFC finding, the ALJ's considers both severe and non-severe impairments, and any combination thereof, and takes into account both objective medical evidence as well as subjective complaints of pain and limitations. 20 C.F.R. § 404.1545(e). The ALJ further considers the claimant's ability to meet the physical, mental, sensory, and other requirements of accomplishing work. 20 C.F.R. § 404.1545(a)(4). An RFC finding is meant to reflect the most that a claimant can do, despite her limitations. 20 C.F.R. § 404.1545(a)(1). Moreover, an RFC finding should reflect the claimant's ability to perform sustained work-related activities in a work setting on regular and continuing basis, meaning eight-hours per day and five days per week. *See* SSR 96-8p; *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006).

At step four, the ALJ considers a claimant's RFC to determine whether she can perform past relevant work ("PRW") despite her impairments. 20 C.F.R. § 416.920(a)(4). If not, the ALJ proceeds to step five of the analysis: establishing whether the claimant–based on her RFC, age, education, and work experience–can make an adjustment to perform other work. *Id.* To determine the available occupations that a claimant could perform, the ALJ relies on the *Dictionary of*

*Occupational Titles* ("DOT"). If the claimant cannot perform other substantial gainful work, the ALJ finds her disabled. 20 C.F.R. § 416.920(a)(4).

## THE ALJ'S DECISION

Applying the sequential five-step evaluation process, the ALJ found that steps one through four favored plaintiff. [Tr. 14–20]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 1, 2008. [Tr. 14].

At step two, the ALJ enumerated plaintiff's severe impairments, including: emphysema, COPD, depression, and anxiety. *Id.* The ALJ determined that plaintiff's complaints of vertigo and status-post tubular adenomas with colon resection were not severe impairments because these conditions no more than minimally impact her ability to work. [Tr. 14–15]. The ALJ also found that, in spite of plaintiff's allegations of osteoporosis and fibromyalgia, these conditions were not medically determinable impairments because they are "not supported by demonstrable clinical signs or a diagnosis from an acceptable medical source." [Tr. 15].

At step three, the ALJ found that none of plaintiff's severe or non-severe impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments. [Tr. 15]. Specifically as to plaintiff's mental impairments, the ALJ found that these conditions: (1) caused only mild limitations in her activities of daily living; (2) caused moderate difficulty in her social functioning; (3) caused moderate difficulty with her concentration, persistence, or pace ("CPP"); but (4) did not result in any extended episodes of decompensation. [Tr. 15-16].

The ALJ then determined that plaintiff had the RFC to perform medium work, as defined in 20 C.F.R. §§404.1567(c), 416.967(c), with the following restrictions: "she must avoid concentrated exposure to temperature extremes, humidity, fumes, dust, chemicals, noxious odors, and poor ventilation and is limited to simple, routine, and repetitive tasks with only occasional

4

interaction with the public and coworkers." [Tr. 16-17]. Although the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ nevertheless found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." [Tr. 17].

Notably, the ALJ gave little weight to the opinion of plaintiff's mental health examiner, Dr. Asha Kohli. *See* [Tr. 18]. After noting, among other things, that Dr. Kohli had assigned plaintiff a "Global Assessment of Functioning" ("GAF") Score of 50,[1] the ALJ commented that this GAF score "typically denotes no disabling symptoms." The ALJ also found that: (1) Dr. Kohli's opinion "appears to be based primarily upon the claimant's own subjective complaints rather than Dr. Kohli's objective findings on examination;" (2) "the claimant's treating nurse practitioner has treated her with Cymbalta and Amitriptyline;" and (3) "[t]he claimant has never sought mental health treatment." Nevertheless, after giving plaintiff the benefit of the doubt, the ALJ found that plaintiff's alleged depression and anxiety were severe impairments. *Id.*

At the hearing on January 15, 2015, the ALJ gave the following hypothetical to the vocational expert ("VE"):

> Q. Now assume for me, please, a person of the Claimant's age, education, past work, as you've just identified, who would be limited to a medium residual functional capacity. However, this indicial should avoid concentrate exposures to temperature extremes, humidity dust and fumes, chemicals, noxious odors and poor ventilation. With those restrictions, could a person perform either of the Claimant's past jobs?
>
> A. They could the general office clerk, but not the warehouse worker.
>
> Q. All right. And then adding to that same hypothetical, now the additional restriction of simple, repetitive tasks in a work environment that allows only

---

[1] The GAF scale is "a hypothetical continuum of mental health-illness" based on the degree of a patient's "psychological, social, and occupational functioning." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text revision, 2000) (DSM–IV–TR). A score between 41 and 50 (out of 100) denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

occasional interaction with the general public and co-workers. Given those additional restrictions, could a person still perform the job as a general office clerk?

A. They could not.

[Tr. 41].

Thus, applying the hypothetical that eventually became the ALJ's RFC finding, the VE testified that plaintiff could not perform her PRW as either an office clerk or as a warehouse worker. *Id.* However, applying this same hypothetical, the VE testified that there were other jobs that plaintiff could perform, to include: (1) tray worker, DOT # 319.677-014 (1,400 jobs in North Carolina and 63,000 jobs available nationally); (2) store laborer, DOT # 922.687-058 (2,600 jobs in North Carolina and 90,000 jobs available nationally); and (3) dining room attendant, DOT # 311.677-018 (4,800 jobs in North Carolina and 231,000 jobs available nationally). [Tr. 42].

At step four, the ALJ adopted the VE's determination that plaintiff could not perform her PRW. [Tr. 19]. The ALJ then noted that plaintiff: (1) was born on March 15, 1956; (2) was 51 years old on the alleged disability onset date; (3) had at least a high school education; and (4) was able to communicate in English. [Tr. 19]. At step five–after considering plaintiff's age, education, work experience, RFC, and the VE's testimony–the ALJ determined that plaintiff was not disabled because she could adjust to other substantial gainful work. [Tr. 19–20].

## PLAINTIFF'S ARGUMENT

Plaintiff generally argues that the ALJ erred by: (1) rejecting Dr. Kohli's medical determinations as to plaintiff's mental health disabilities; and (2) finding plaintiff's vertigo to be non-severe, thereby failing to include in the RFC finding all of the practical limitations due to plaintiff's documented disabilities. *See* [D.E. 17] at 3. Because plaintiff's counsel orally withdrew the second argument at the hearing on August 30, 2017, the court declines to further address that

6

argument. *See, e.g., Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (declining to address a claimant's additional arguments after remanding the case on other grounds).

As to her first argument, plaintiff emphasizes that Dr. Kohli: (1) noted plaintiff's depressed mood and sad affect, (2) assigned a GAF Score of 50; (3) opined that plaintiff had limited insight and judgment with poor concentration and attention; and (4) diagnosed plaintiff with major depression, recurrent without psychotic symptoms. [D.E. 17] at 5 (citing Tr. 483–84).

In support of her first argument, plaintiff initially contends that the ALJ's RFC finding is not supported by substantial evidence because it does not address all the practical effects of plaintiff's mental impairments that were clinically observed by Dr. Kohli. *Id.* at 6–7. Second, plaintiff contends that the ALJ erred by failing to incorporate into the RFC finding, or into the hypothetical given to the VE at the hearing, the ALJ's own determination that plaintiff suffered from moderate difficulties in CPP; instead, the ALJ merely limited plaintiff to "simple, routine, and repetitive tasks." *Id.* at 7–9 (citing [Tr. 16–17] and referencing *Masico v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015)). Third, plaintiff contends that the ALJ gave insufficient reasons as to why Dr. Kohli's opinion was not entitled to controlling weight under 20 C.F.R. § 404.1527. *Id.* at 9–10. Fourth, plaintiff contends that the ALJ's assessment–that a GAF score of 50 "typically denotes no disabling symptoms"–was demonstrably incorrect. *Id.* at 10–11. Finally, plaintiff objects to the ALJ's finding that Dr. Kohli's opinion was entitled to less weight both due to the fact that the opinion relied on plaintiff's subjective complaints, and because plaintiff generally lacked a substantial prior treatment record for mental health difficulties. *Id.* at 11–14.

## DISCUSSION

In *Mascio*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") found that an ALJ's determination of a claimant's RFC was erroneous because, among other

7

things, the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration persistence or pace." *Masico*, 780 F.3d at 633. The Fourth Circuit further noted that, because "the ability to perform simple tasks differs from the ability to stay on task," an ALJ does not "account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (internal quotation and citations omitted).

In this case, the ALJ found that plaintiff's depression and anxiety were severe disabilities. [Tr. 14]. The ALJ also determined that these mental impairments caused, among other things, *moderate* difficulty with plaintiff's CPP. [Tr. 15-16]. However, as discussed above, the record reflects that neither the ALJ's RFC finding [Tr. 16-17], nor the hypothetical given to the VE at the hearing [Tr. 41], included any notation of plaintiff's CPP limitations.

The court determines that, because the ALJ did not incorporate plaintiff's CPP limitations into the VE hypothetical or the RFC finding, but instead merely limited plaintiff to "simple, routine tasks or unskilled work," the ALJ failed to apply the correctly apply *Mascio*, 780 F.3d at 638. Therefore, the court is precluded from determining whether the ALJ's decision is supported by substantial evidence. *See Perales*, 402 U.S. at 401. Accordingly, the court will exercise its discretion and remand to the Commissioner for additional fact-finding, as necessary, to resolve the matter. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (noting that remand, not reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review."); *see also Edwards v. Bowen*, 672 F.Supp. 230, 236 (E.D.N.C. 1987) ("The decision of whether to reverse and remand for calculation of benefits, or reverse and remand for a new hearing, is one which lies within the sound discretion of the court.").

8

In light of the need to remand the case, the court need not address plaintiff's additional contentions of error. *See Boone*, 353 F.3d at 211 n.19. However, in its discretion, the court will address plaintiff's fourth contention–that the ALJ's assessment of plaintiff's GAF score was demonstrably incorrect. *See* [D.E. 17] at 10–11.

As noted above, the ALJ's decision stated that plaintiff's assigned GAF score of 50 "typically denotes no disabling symptoms." [Tr. 18]. It is unclear from the record whether or not a GAF score of 50 properly encapsulates plaintiff's mental health symptoms. However, the relevant scientific literature indicates that the ALJ's generalization regarding the severity of such a GAF score is dubious at best. *See supra* n.1 (quoting DSM–IV–TR for the proposition that a GAF score of 41-50 denotes "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning"). Upon remand, the Commissioner shall properly assess the severity of the symptoms of, and the practical effects resulting from, plaintiff's mental health impairments.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings [D.E. 16] is GRANTED and defendant's motion [D.E. 18] is DENIED. The decision of the Commissioner is REMANDED to the Commissioner for further proceedings consistent with this decision.

SO ORDERED.

This 27 day of September, 2017.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE